

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARLENA PLIZGA,

        Plaintiffs,

-against-

LITTLE POLAND RESTAURANT INC.,
KAROL JURCZYK, LINDEMBERG LEITE,
TERESA MAGDALENA, MUSIARZ,

        Defendants.

15-CV-08820 (LAK) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. LEWIS A. KAPLAN**

**BARBARA MOSES, United States Magistrate Judge.**

Before me is a proposed settlement in an action brought under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, New York Labor Law (NYLL) §§ 190 *et seq.* and 650 *et seq.*, New York Executive Law § 296, and § 8-107 of the New York City Charter and Administrative Code. The parties request approval of the settlement, including the award of fees and costs to plaintiff's counsel, as fair and reasonable. For the reasons stated below, I respectfully recommend that the District Judge DENY the request, without prejudice to refiling if and when the parties remove or modify the confidentiality language that, as now written, would bar the plaintiff from disclosing the terms of the parties' settlement.

## ALLEGATIONS

According to plaintiff's Amended Complaint (Dkt. No. 5), she worked as a cook at defendants' restaurant, known as Little Poland, from June 1, 2012 through January 10, 2014. Am. Compl. ¶¶ 17-18. Throughout her employment, defendants required her to work 48 hours or more per week without paying her time-and-a-half for her overtime hours as required by the FLSA and NYLL. *Id.* ¶¶ 19-20, 44-53. Additionally, plaintiff alleges that she was sexually harassed by "numerous" Little Poland employees; that defendants failed to "take adequate steps to prevent or address" the sexual harassment, in violation of N.Y. Exec. Law § 296; and that the creation and

maintenance of a hostile work environment violated § 8-107 of the N.Y.C. Charter & Admin. Code. *Id.* ¶¶ 60, 68. Plaintiff alleges that she quit her job at Little Poland "because she could no longer stand to face the constant sexual harassment she suffered." *Id.* ¶ 31.

## PROCEDURAL HISTORY

On February 2, 2016, this action was referred to me for general pretrial management and report and recommendation on dispositive motions. The next day, February 3, 2016, plaintiff's counsel advised chambers that the parties had reached a settlement agreement in principle. Accordingly, I issued an order (Dkt. No. 14) directing the parties to submit their written settlement agreement no later than March 15, 2016, together with a joint letter "setting forth their views as to why the settlement is fair and reasonable and should be approved."

The parties failed to meet that deadline. On March 18, 2016 (after chambers contacted counsel concerning the delinquent submission), plaintiff requested a 30-day extension of time for the parties to submit their settlement materials, which I granted (Dkt. No. 16), warning that no further extensions would be granted and that if the parties did not meet the April 18 deadline I would schedule an initial case management conference. Nonetheless, on April 18, 2016, the parties requested a second extension, through May 2, 2016, which I denied. (Dkt. No. 19.) I then scheduled a case management conference for May 13, 2016 (Dkt. No. 18), giving the parties a deadline of May 6, 2016 to file their pre-conference statement, and noting that if their settlement materials were on file before that date they could request that the case management conference be taken off the calendar.

The parties failed to submit either their settlement agreement or their pre-conference statement by May 6, 2016. Instead, on May 11, 2016, plaintiff filed a copy of the parties' fully-executed Settlement Agreement and Mutual General Releases (Agreement), together with detailed

time records for plaintiff's counsel, documentation of counsel's expenses, and a letter seeking review and approval of the settlement. (Dkt. No. 20.)[1]

## DISCUSSION

A settlement that results in the dismissal of an FLSA claim with prejudice requires approval of the district court or the Department of Labor even where, as here, the claim was brought by a single plaintiff who never sought to represent a class. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016). Before a district court enters judgment, it must scrutinize the settlement to determine that it is "fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "The Court's obligation to police FLSA settlements to ensure that they are fair and reasonable is a searching one. It implicates both the rights of the settling employee and the interests of the public at large." *Camacho v. Ess-A-Bagel, Inc.*, No. 14 Civ. 2592 (LAK), 2015 WL 129723, at *2 (S.D.N.Y. Jan. 9, 2015). A fair settlement must reflect "a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Mamani v. Licetti*, No. 13 Civ. 7002 (KMW), 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014).

In this case, it took the parties over three months to finalize and submit a relatively simple settlement for judicial review. During that period they disregarded three separate deadlines set by this Court. Nonetheless, because "[c]ompromises of disputed claims are favored by the courts," *Williams v. First Nat. Bank*, 216 U.S. 582, 595, 30 S. Ct. 441, 445 (1910); *see also TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982) (discussing the "paramount policy of encouraging settlements"); *Xerox Corp. v. Media Scis., Inc.*, 609 F. Supp. 2d 319, 326 (S.D.N.Y.

---

[1] Although the letter is signed only by plaintiff's counsel, Robert Wisniewski, it indicates that the request for judicial approval is made jointly by the parties. *See* Ltr. dated May 10, 2016, at 1, 7.

3

2009) ("[i]n general, public policy favors the settlement of disputes"); *In re Auction Houses Antitrust Litig.*, No. 00 Civ. 0648 (LAK), 2001 WL 170792, at *8 (S.D.N.Y. Feb. 22, 2001), *aff'd*, 42 F. App'x 511 (2d Cir. 2002) (noting "the long established policy of favoring settlements"), I have evaluated the parties' settlement on the merits. The financial terms – including the award to counsel – appear to be fair and reasonable, as do the release provisions, which are broad but reciprocal. After careful consideration of the parties' submissions, however, I cannot recommend that the District Judge approve the Agreement as written, because the confidentiality provisions undercut the remedial purposes of the FLSA and for that reason contravene public policy.

## I. Financial Terms

The Agreement provides for a total "Settlement Payment" of $20,000, of which $13,400 will go to plaintiff and $6,600 will be paid to plaintiff's counsel as fees and costs. Ag. ¶ 1. The payments will be made in five equal monthly installments. *Id.* ¶ 1(a). In the event defendants miss an installment payment, and fail to cure their default within ten days after a written default notice is sent, defendants will be contractually required to pay "double the amount of the Settlement Payment," less any payments already made, not as a "penalty" but as "an amount that Plaintiff believes she would be able to obtain upon a trial of the case." *Id.* ¶ 2.

The Agreement does not identify what portion of the $13,400 represents the settlement of plaintiff's overtime claim, as distinguished from her claims for sexual harassment. The parties' letter, however, asserts that the FLSA claims, assuming a "best case scenario," would entitle plaintiff to $3,868 in unpaid overtime, plus $3,076 in "penalties under the FLSA and NYLL (not stacked)," for a potential total of $6,944. Ltr. at 3.[2] The remainder of the Settlement Payment, according to the parties, compensates plaintiff for her sexual harassment claims. *Id.*

---

[2] Courts in this Circuit are divided as to whether "stacked" liquidated damages – that is, an award of liquidated damages under both the FLSA and the NYLL – are permissible. Some judges have

4

This calculation is at least roughly consistent with the Amended Complaint, which alleges that plaintiff worked 48 hours or more per week from June 1, 2012 to January 10, 2014, but was paid the same hourly rate – $11 per hour initially, later raised to $12 per hour – for all of her hours, without the 50% premium to which she was entitled when she exceeded 40 hours per week. Am. Compl. ¶¶ 18, 20. Assuming that plaintiff was entitled to eight hours of overtime per week for 83 weeks, at an average overtime premium of $5.75 per hour, her FLSA damages – before liquidated damages, interest, or attorneys' fees – would be approximately $3,818. It is thus clear that the $13,400 going to plaintiff under the Agreement is more than she could reasonably expect as full compensation for her overtime claim, even with "stacked" liquidated damages and interest.

I have no way to evaluate the merits of plaintiff's sexual harassment claims, which account for the remainder of the Settlement Payment. Nor do I have any responsibility for doing so, as judicial approval is not required when litigants settle individual harassment claims. Similarly, the parties' recitation that the plaintiff believes she could obtain double the settlement amount at trial, Ag. ¶ 2, presumably reflects the estimated value of her harassment claims as well as her FLSA claims, and therefore does not suggest that the settlement of those FLSA claims is unfair or unreasonable. The parties also report that defendants are facing unspecified "financial difficulties," such that plaintiff faces a risk that she would be unable to collect a trial judgment in full. Ltr. at 4. This factor also militates in favor of approving the financial terms of the settlement as presented.

---

found that stacked damages are permissible because the liquidated damages provisions of the FLSA are compensatory in nature while the liquidated damages provisions of the NYLL are punitive. *See, e.g.*, *Inclan v. New York Hosp. Group, Inc.*, No. 12 Civ. 4498 (NRB), 95 F. Supp. 3d 490, 505-06 (S.D.N.Y. 2015) (collecting cases). However, in light of recent amendments to the NYLL's liquidated damages provisions, many judges now hold that stacked liquidated damages amount to an impermissible double recovery. *See Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176 (PAE), 2016 WL 3248493, at *34-35 (S.D.N.Y. June 9, 2016) (collecting cases); *Santana v. Brown*, No. 14 Civ. 4279 (LGS), 2015 WL 4865311, at *5 (S.D.N.Y. Aug. 12, 2015) (denying recovery of stacked liquidated damages).

*See Lopez v. Ploy Dee, Inc.*, No. 15 Civ. 0647 (AJN), 2016 WL 1626631, at *2 (S.D.N.Y. Apr. 21, 2016) (noting "the difficulty of collecting a larger judgment" as a factor to be considered in analyzing the "range of possible recovery").

For these reasons, I conclude that the payment to plaintiff, which exceeds her potential recovery under the FLSA, is fair and reasonable, especially when considered in light of the inherent time, cost, and risk savings for both sides in settling the case.

## II.   Attorneys' Fees and Costs

I am also satisfied that the award of fees and costs to Robert Wisniewski P.C., is reasonable. That award totals $6,600, which is 33% of the gross settlement fund. Of that amount, $1,032.85 constitutes reimbursement for out-of-pocket costs advanced by counsel. Ltr. at 5. Those costs are itemized on counsel's invoice (Dkt. No. 20-2, at 5) and evidenced by receipts and cancelled checks (Dkt. No. 20-3). The remaining $5,567.15 represents 29.35% of the net settlement fund (after costs), and 45.43% of the actual value of the time spent by Mr. Wisniewski and two legal assistants on this action at their ordinary hourly rates.

A court evaluating attorneys' fees in an FLSA settlement may use either the "lodestar" method or the "percentage of the fund" method, but should be guided in any event by factors including: (1) counsel's time and labor; (2) the magnitude and complexity of the case; (3) the risks inherent in continued litigation; (4) the quality of the representation; (5) the relation of the fee to the settlement; and (6) public policy considerations. *Lopez*, 2016 WL 1626631, at *4 (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

Under the "percentage of the fund" method, attorneys' fee awards of one third or less of the total settlement amount are, in most cases, considered reasonable in this District. *See, e.g., Zhang v. Lin Kumo Japanese Rest., Inc.*, No. 13 Civ. 6667 (PAE), 2015 WL 5122530, at *4

(S.D.N.Y. Aug. 31, 2015) (reducing fee award from 37% to 33% in FLSA settlement); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440 (DAB), 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010) (collecting cases); *cf. Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 Civ. 6094 (PAE), 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) (reducing fee award from 33% to 25% of a "relatively modest" gross settlement amount obtained for a class of over 4,000 members). The award here is presumptively reasonable as a percentage of the fund.

Under the lodestar method, the court determines the presumptively reasonable fee by multiplying the number of hours reasonably billed in a matter by an appropriate hourly rate. *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 20-21 (S.D.N.Y. 2015). Where the lodestar analysis is used "as a mere cross-check" on an otherwise-acceptable percentage of the fund, "the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (citing *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007)). In this case, the detailed time records submitted along with the Agreement show that Mr. Wisniewski, who is an experienced wage-and-hour litigator, spent 23.2 hours on this case, at a billing rate of $450 per hour. Ltr. at 6. Legal assistant Norma Lopez, whose rate is $125 per hour, spent 8.8 hours on the case, and assistant Dorothy Jankowska, whose rate is also $125 per hour, spent 5.7 hours, primarily devoted to damages calculations. *Id.* In the aggregate, these three timekeepers spent 37.7 hours pursuing plaintiff's claims, for a total value of $12,252.50 at the rates quoted. (Dkt. No. 20-2, at 4.) These hourly rates, while on the high side for a case such as this, do not appear to be facially unreasonable.[3] Moreover, the actual fee award sought, in the amount of $5,567.15, is less than half

---

[3] *See, e.g., Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906 (HBP), 2015 WL 4006896, at *7, *8 (S.D.N.Y. July 1, 2015) ("a fee ranging from $250 to $450 is appropriate for experienced litigators

of this figure, meaning that the lodestar analysis here functions primarily as a cross-check on the reasonableness of the fee.

It is clear from both the docket sheet and counsel's time records that the parties focused on settlement from the outset. Once the pleadings were settled, neither party made any motions or conducted any formal discovery. They reached a settlement agreement in principle – without the aid of the Court – before the initial pretrial conference, which was never held. The settlement negotiations themselves were "extensive," however, and based in part on payroll records and other documents provided informally by defendants. Ltr. at 1, 4. There is much to be admired in this approach, which conserves both attorney time and judicial resources. Moreover, while in many cases early settlements permit attorneys to earn contingency fees greater than their lodestars, *see Hyun v. Ippudo USA Holdings*, No. 14 Civ. 8706 (AJN), 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) (percentage method can be more advantageous to plaintiffs' counsel than lodestar method "where the parties were able to settle relatively early"), in this case plaintiff's attorney has agreed to take a fee substantially lower than his lodestar. Accordingly, I conclude that under either method of analysis the fee award agreed to by the parties in this action is reasonable.

### III.   Confidentiality Provisions

Notwithstanding that the Agreement itself has been placed upon the public record, it contains a one-way confidentiality provision that would prevent plaintiff (but not defendants) from disclosing "Confidential Settlement Information," defined as "the terms of the Agreement,

---

in wage-and-hour cases."); *Carrasco v. W. Vill. Ritz Corp.*, No. 11 Civ. 7843 (DLC) (AJP), 2012 WL 2814112, at *7 (S.D.N.Y. July 11, 2012) ("the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450"); *Mills v. Capital One, N.A.*, No. 14 Civ. 1937 (HBP), 2015 WL 5730008, at *12 (S.D.N.Y. Sept. 30, 2015) ("hourly rates between $100 and $125 for paralegal work have been found to be reasonable").

including but not limited to the amount of the Settlement Payment," except to a government agency or to a spouse, tax advisor, or attorney. Ag. ¶ 5. The same paragraph assures plaintiff that she will not be prevented from making truthful statements about "the subject matter of the lawsuit or about the lawsuit itself." *Id.* Her right to speak, however, apparently does not extend to what is arguably the most important truthful statement of all: the fact that defendants agreed to pay $20,000 to settle the case. That information is "Confidential Settlement Information," which plaintiff "warrants and agrees" that she "has not, and will not in the future, disclose." *Id.* ¶ 6. Moreover, these restrictions are "material and critical terms of the Agreement." *Id.* ¶ 7. In the event of a breach of the confidentiality provisions, defendants would be entitled to liquidated damages of $1,000, *id.* ¶ 8(b), together with "interest, costs, expenses and reasonable attorneys' fees." *Id.* ¶ 8(a).

As the parties acknowledge, *see* Ltr. at 3, confidentiality or "gag" clauses are contrary to public policy, and to the remedial purposes of the FLSA, because they "prevent the spread of information about FLSA actions to other workers . . . who [could] then use that information to vindicate their own statutory rights." *Lopez*, 2016 WL 1626631, at *3. Even before *Cheeks*, the "overwhelming majority" of courts in this Circuit rejected the notion that such settlements could be confidential. *See Armenta v. Dirty Bird Grp., LLC*, No. 13 Civ. 4603 (WHP), 2014 WL 3344287, at *2 (S.D.N.Y. June 27, 2014) (collecting cases). Prohibiting an FLSA plaintiff from speaking truthfully about her experiences, her claims, and the resolution of her lawsuit is "in strong tension with the remedial purposes of the FLSA," *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 177 (S.D.N.Y. 2015), and undermines the public's "right to know about the terms of such judicially approved settlements." *Armenta*, 2014 WL 3344287, at * 2. "[I]t would be the very rare case, if any, where confidentiality terms in a settlement agreement would be appropriate in resolving a

9

wage-and-hour lawsuit." *Souza v. 65 St. Marks Bistro*, No. 15 Civ. 0327 (JLC), 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015).

This is not one of those cases. Courts in this Circuit have, from time to time, approved FLSA settlement agreements that contain "non-disparagement" clauses generally prohibiting a party from making negative statements about an adverse party. *See, e.g.*, *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680 (PAE), 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016); *Panganiban v. Medex Diagnostic and Treatment Ctr., LLC*, No. 15 Civ. 2588 (AMD), 2016 WL 927183, at *2 (E.D.N.Y. Mar. 7, 2016). Such clauses, however, "must include a carve-out for truthful statements about plaintiffs' experience in litigating their case. Otherwise, such a provision contravenes the remedial purpose of the statute and, in this context, is not 'fair and reasonable.'" *Nights of Cabiria*, 96 F. Supp. 3d at 180 n.65. Here, the confidentiality provision contains what at first glance looks like just such a "carve-out." When paragraphs 5-8 are read together, however, it becomes clear that plaintiff could not make truthful statements concerning the terms on which she settled this case without risking a $1,000 judgment, in addition to liability for defendants' litigation and collection costs. Ag. ¶ 8. I agree with other courts in this District that "a provision of this type is 'contrary to well-established public policy,'" *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016) (quoting *KangMing Sun v. GuangJun Li*, No. 13 Civ. 8507 (WHP), 2015 WL 6125710, at *1 (S.D.N.Y. Sept. 15, 2015)), and I therefore recommend, respectfully, that the District Judge deny the parties' request for approval of the Agreement as written.

### IV. Mutual General Releases

The Agreement also contains broad general releases, in which each party releases and discharges its opponent(s) from "all" claims "for, upon, or by reason of any matter, cause or thing

whatsoever from the beginning of the world to the day of the date [sic] of this release." Ag. ¶¶ 9, 10. Judges in this District have not taken a uniform approach to mutual general releases in wage and hour cases. Some have refused to approve any FLSA settlement unless the release given by the plaintiff is "limited to the claims at issue in this action." *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15 Civ. 4259 (RA), 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) (collecting cases); *see also Martinez*, 2016 WL 206474, at *2 ("The Court will not approve a release provision that extends beyond the claims at issue in this action."); *Nights of Cabiria,* 96 F. Supp. 3d at 181 ("the Court will not countenance employers using FLSA settlement to erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute"). Judicial disfavor of broad releases is especially pronounced where "the releases were not mutual and protected only the defendants." *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 Civ. 5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016); *but see Flores-Mendieta v. Bitefood Ltd.*, 15 Civ. 4997 (AJN), 2016 WL 1626630, at *2 (S.D.N.Y. Apr. 21, 2016) (rejecting release that covered "any and all" causes of action "of any nature whatsoever, known or unknown," even though release was mutual).

Other judges, including the undersigned magistrate judge, have accepted the mutual general release, at least in the non-class context, as an effective way to ensure that "both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes." *Souza*, 2015 WL 7271747, at *5. Where "the settlement only binds the parties to the suit," and the plaintiff can make an informed decision about the value of any unpleaded claims she potentially has against her employer, "as compared to the class action context, there is a much smaller likelihood that other claims will be unfairly extinguished." *Id.* at *6. *See also Lola*, 2016 WL 922223, at *2 (approving FLSA settlement

11

containing "mutual" general releases "binding both Plaintiffs and Defendants"); *Weng v. T&W Rest., Inc.*, No. 15 Civ. 08167 (BCM), 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (approving mutual general releases in non-class FLSA settlement).

Here, the release provisions are broad but mutual, releasing both plaintiff and defendants from liability for any past claims each might have against the other. Because this case is not a class action, there is no danger that an overbroad release would bind class members who had no bargaining power concerning the settlement terms. *See Souza*, 2015 WL 7271747, at *5-6 (approving broad general release in non-class FLSA settlement on condition that release be mutual). Moreover, the plaintiff here, as in *Souza*, is no longer an employee of the defendants, eliminating the danger that the release was obtained through improper job-related pressure. *See id.* at *5. And since the settlement payment exceeds the value of plaintiff's FLSA claim, this is plainly not a case in which the employer is "using [an] FLSA settlement to erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute." *Nights of Cabiria*, 96 F. Supp. 3d at 181.

Where, as here, a plaintiff who no longer works for the defendants files individual claims, including an FLSA claim, and then settles her case for more than she could likely win at trial on that FLSA claim, she should not be forbidden by the courts from entering into the same mutual general releases that are the norm in most other non-class litigation settlements. For these reasons, and under the circumstances present here, I conclude that there is nothing unfair or unreasonable about the release provisions in the Agreement.

## CONCLUSION

For the reasons set forth above, I conclude that the Agreement is fair and reasonable with the exception of the confidentiality provisions. Because those provisions are not fair and

reasonable, I respectfully recommend that the District Judge DENY the parties' application for judicial approval of the Agreement, without prejudice to refiling their application after removing or modifying the objectionable language.

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Lewis A. Kaplan at 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Kaplan. Failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: New York, New York
July 18, 2016

SO ORDERED.

_____
BARBARA MOSES
United States Magistrate Judge